Slip Op. 21-121

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| NTSF SEAFOODS JOINT STOCK COMPANY and VINH QUANG FISHERIES CORPORATION,<br><br>    Plaintiffs,<br><br>v.<br><br>UNITED STATES,<br><br>    Defendant,<br><br>and<br><br>CATFISH FARMERS OF AMERICA, ALABAMA CATFISH INC., AMERICA'S CATCH, CONSOLIDATED CATFISH COMPANIES LLC, DELTA PRIDE CATFISH, INC., GUIDRY'S CATFISH, INC., HEARTLAND CATFISH COMPANY, MAGNOLIA PROCESSING, INC., and SIMMONS FARM RAISED CATFISH, INC.,<br><br>    Defendant-Intervenors. | Before: Jennifer Choe-Groves, Judge<br><br>Court No. 19-00063 |

## **OPINION**

[Sustaining the remand results of the U.S. Department of Commerce in the 2016–2017 administrative review of the antidumping duty order on certain frozen fish fillets from the Socialist Republic of Vietnam.]

Dated: September 20, 2021

<u>Jonathan M. Freed</u>, Trade Pacific, PLLC, of Washington, D.C., for Plaintiffs NTSF Seafoods Joint Stock Company and Vinh Quang Fisheries Corporation.

<u>Kara M. Westercamp</u>, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., for Defendant United States. With her on the brief were <u>Brian M. Boynton</u>, Acting Assistant Attorney General, <u>Jeanne E. Davidson</u>, Director, and <u>Patricia M. McCarthy</u>, Assistant Director. Of counsel on the brief was <u>Hendricks Valenzuela</u>, Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce.

<u>Jonathan M. Zielinski</u>, <u>James R. Cannon, Jr.</u>, and <u>Nicole Brunda</u>, Cassidy Levy Kent (USA) LLP, of Washington, D.C., for Defendant-Intervenors Catfish Farmers of America, Alabama Catfish Inc., America's Catch, Consolidated Catfish Companies LLC, Delta Pride Catfish, Inc., Guidry's Catfish, Inc., Heartland Catfish Company, Magnolia Processing, Inc., and Simmons Farm Raised Catfish, Inc.

  Choe-Groves, Judge: This case involves frozen fish fillets, including regular, shank, and strip fillets and portions thereof, of the species *Pangasius Bocourti*, *Pangasius Hypophthalmus* (also known as *Pangasius Pangasius*) and *Pangasius Micronemus*. Plaintiffs NTSF Seafoods Joint Stock Company ("NTSF") and Vinh Quang Fisheries Corporation ("Vinh Quang") (collectively, "Plaintiffs") filed this action challenging the final results of the U.S. Department of Commerce ("Commerce") in the 2016–2017 administrative review of the antidumping duty order covering certain frozen fish fillets from the Socialist Republic of Vietnam. See <u>Certain Frozen Fish Fillets from the Socialist Republic of Vietnam</u> ("<u>Final Results</u>"), 84 Fed. Reg. 18,007 (Dep't of Commerce Apr. 29,

2019) (final results, and final results of no shipments of the antidumping duty administrative review; 2016–2017); see also Certain Frozen Fish Fillets from the Socialist Republic of Vietnam: Issues and Decision Mem. for the Final Results of the Fourteenth Antidumping Duty Admin. Review: 2016–2017 (Dep't of Commerce Apr. 19, 2019), ECF No. 24-3 ("Final IDM"). Before the Court are the Final Results of Redetermination Pursuant to Court Remand ("Remand Results"), ECF No. 78-1, which the Court ordered in NTSF Seafoods Joint Stock Co. v. United States ("NTSF"), 44 CIT __, 487 F. Supp. 3d 1310 (2020). For the following reasons, the Court sustains the Remand Results.

## ISSUES PRESENTED

The Court reviews the following issues:

1. Whether Commerce's determination to grant offsets for NTSF's fish oil and fish meal byproducts is supported by substantial evidence; and

2. Whether Commerce's determination that the GTA Data are the best available information to calculate a surrogate value for NTSF's fish oil and fish meal byproducts is supported by substantial evidence.

## BACKGROUND

The Court presumes familiarity with the facts and procedural history set forth in its prior opinion and recounts the facts relevant to the Court's review of the Remand Results. See NTSF, 44 CIT at __, 487 F. Supp. 3d at 1314–16.

In the Final Results, Commerce granted offsets for fish head and bone byproducts when calculating normal value for NTSF, but denied offsets for fish oil and fish meal byproducts because Commerce determined that NTSF failed to demonstrate that NTSF actually produced and sold fish oil and fish meal byproducts during the last three months of the period of review.  Final IDM at 52–53.  Plaintiffs challenged Commerce's determination.  The Court held in NTSF that Commerce's denial of byproduct offsets for fish oil and fish meal was unsupported by substantial evidence in light of potentially contradictory evidence on the record and viewing the record as a whole, and remanded the case for further proceedings.  NTSF, 44 CIT at __, 487 F. Supp. 3d at 1321–23.

Commerce filed the Remand Results on March 23, 2021.  On remand, Commerce reversed its Final Results determination and granted NTSF byproduct offsets for fish oil and fish meal.  See Remand Results at 1.  Based on Commerce's remand redetermination, Commerce calculated a revised dumping margin of $1.28 per kilogram for NTSF.  Id. at 16.  Commerce based the all-others rate applied to separate rate-eligible respondents not selected for individual examination on NTSF's calculated margin.  Id. at 16–17; see Final Results, 84 Fed. Reg. at 18,008; Final IDM at 49.  Commerce adjusted the all-others rate applied to Vinh Quang accordingly.  Remand Results at 17.

## JURISDICTION AND STANDARD OF REVIEW

The Court has jurisdiction pursuant to 19 U.S.C. § 1516a(a)(2)(B)(iii) and 28 U.S.C. § 1581(c). The Court shall hold unlawful any determination found to be unsupported by substantial evidence on the record or otherwise not in accordance with the law. 19 U.S.C. § 1516a(b)(1)(B)(i). The Court also reviews determinations made on remand for compliance with the Court's remand order. Ad Hoc Shrimp Trade Action Comm. v. United States, 38 CIT __, __, 992 F. Supp. 2d 1285, 1290 (2014), aff'd, 802 F.3d 1339 (Fed. Cir. 2015).

## DISCUSSION

Plaintiffs and Defendant United States ("Defendant") ask the Court to sustain the Remand Results. See Pls.' Comments Final Results Remand Redetermination, ECF No. 85; Def.'s Resp. Supp. Remand Redetermination, ECF No. 90. Defendant-Intervenors Catfish Farmers of America, Alabama Catfish Inc., America's Catch, Consolidated Catfish Companies LLC, Delta Pride Catfish, Inc., Guidry's Catfish, Inc., Heartland Catfish Company, Magnolia Processing, Inc., and Simmons Farm Raised Catfish, Inc. (collectively, "Defendant-Intervenors" or "Def.-Intervs.") filed Defendant-Intervenors' Comments in Opposition to Remand Results, ECF Nos. 83, 84 ("Def.-Intervs.' Cmts.").

## I.     Commerce's Determination to Grant Byproduct Offsets

Commerce determined on remand that the record supported granting an offset for NTSF's sales of fish oil and fish meal byproducts during the last three months of the period of review. See Remand Results at 4–6. Defendant-Intervenors argue that NTSF failed to reconcile its byproduct data and support an offset as required and, therefore, Commerce's redetermination granting offsets for fish oil and fish meal byproducts is unsupported by substantial evidence. Def.-Intervs.' Cmts. at 3–10.

For antidumping proceedings in which the subject merchandise is exported from a non-market economy and available information does not permit the normal value of subject merchandise to be determined using sales in the home market, normal value is based on the value of the factors of production utilized in the production of the subject merchandise. 19 U.S.C. § 1677b(c)(1). The statute provides that Commerce shall value factors of production based on the best available information from a surrogate market economy country or countries. Id.

The statute states that factors of production include, but are not limited to: hours of labor required; quantities of raw materials employed; amounts of energy and other utilities consumed; and representative capital cost, including depreciation. Id. § 1677b(c)(3). As not all raw materials are incorporated into the final product, Commerce provides offsets for byproducts generated during the

production process.  See Arch Chems., Inc. v. United States, 33 CIT 954, 956 (2009); Ass'n of Am. School Paper Suppliers v. United States, 32 CIT 1196, 1205 (2008); see also Tianjin Magnesium Int'l Co. v. United States, 34 CIT 980, 993 (2010) (stating that the antidumping statute does not prescribe a method for calculating byproduct offsets, instead leaving the decision to Commerce).  The producer bears the burden of substantiating any byproduct offsets and must present Commerce with sufficient information to support its claims for offsets.  See Arch Chems., 33 CIT at 956.  The producer must show that the byproduct of the production of the subject merchandise "is either resold or has commercial value and re-enters the [producer's] production process." Id.; see Am. Tubular Prods., LLC v. United States, 38 CIT __, __, Slip Op. 14-116 at 17 (Sept. 26, 2014).

Commerce determined on remand that NTSF reconciled its byproduct reporting properly and substantiated an offset because NTSF's reporting accounted for the byproducts generated during the period of review.  Remand Results at 4–6, 10–12.  Commerce cited a processing contract between NTSF and an unaffiliated third-party processor for the production of fish oil and fish meal, which was in effect during the last three months of the period of review.  See id. at 5–6 (citing Frozen Fish Fillets from Vietnam – NTSF's Resp. to the Department's Suppl. Sections C & D Questionnaire at Supp CD-43, Ex. Supp CD-47, PR 370, CR 179–

97 (May 15, 2018) ("NTSF Suppl. Resp.")).[1] Based on its review of NTSF's processing contract, Commerce determined that NTSF did not sell fish head and bone byproducts to the processor and that fish oil and fish meal byproducts were produced pursuant to a tolling agreement. Id. (citing NTSF Suppl. Resp. Ex. Supp CD-47). Commerce also cited NTSF's production data in support of its determination that during the last three months of the period of review, NTSF transferred fish head and bone byproducts to the unaffiliated processor for processing into fish oil and fish meal byproducts, which NTSF subsequently sold. See id. at 11 (citing Frozen Fish Fillets from Vietnam – Section D Resp. & Section D App. Resp. at D-16, Ex. D-13, PR 181, CR 92–95 (Jan. 18, 2018) ("NTSF Section D Resp.")).

Commerce reviewed NTSF's financial statements and production data and determined that NTSF sold fish head and bone byproducts during the first nine months of the period of review and sold fish oil and fish meal byproducts during the last three months of the period of review. Id. at 10–12 (citing NTSF Section D Resp. Ex. D-13; NTSF Suppl. Resp. Ex. Supp CD-44). Commerce determined that NTSF's reporting accounts for byproducts generated during the period of review and that a "miniscule discrepancy" in the reporting of 0.036 percent did not render

---

[1] Citations to the administrative record reflect public record ("PR") and confidential record ("CR") document numbers.

the reconciliation invalid. Id. at 10–11 (citing NTSF Section D Resp. Ex. D-13; NTSF Suppl. Resp. Ex. Supp CD-44). Commerce rejected Defendant-Intervenors' argument that NTSF allegedly failed to reconcile its byproduct transfers independently from sales. Id. at 11. Commerce determined that NTSF and non-NTSF byproducts processed by a third-party were not comparable, due to potential differences in the inputs used for non-NTSF products. Id. at 12 (citing NTSF Suppl. Resp. Ex. Supp. CD-47). Commerce noted that the record did not indicate that NTSF's production data reporting was unreliable and that NTSF had provided all requested documentation regarding its byproduct generation. Id. at 11. Commerce concluded that NTSF had reconciled its byproduct production and presented sufficient information to substantiate byproduct offsets for fish oil and fish meal. Id.

The Court notes that the processing contract cited by Commerce shows that NTSF transferred fish head and bone byproducts to a processor, but NTSF retained ownership of the byproducts and the processed fish oil and fish meal byproducts. See NTSF Suppl. Resp. Ex. Supp CD-47. The production data cited by Commerce account for the amount of byproducts generated during the period of review because the data show fish head and bone byproduct generation, along with fish head and bone byproduct transfers to an unaffiliated processor and the output of fish oil and fish meal byproducts from the processor. See NTSF Section D Resp.

Ex. D-13.  The Court observes that NTSF's financial statements cited by Commerce support Commerce's determination that NTSF retained ownership of the byproducts sent to the processor and show that NTSF sold fish oil and fish meal, but did not sell fish head and bone, during the last three months of the period of review.  See NTSF Suppl. Resp. Ex. Supp CD-44.  NTSF's financial statements and production data reviewed by Commerce account for NTSF's byproducts generated during the period of review.  See id.; NTSF Section D Resp. Ex. D-13.  The Court concludes, therefore, that Commerce's determinations that NTSF reconciled its byproduct reporting properly and that NTSF substantiated its fish oil and fish meal byproducts sufficiently to receive an offset are supported by substantial record evidence cited by Commerce, including NTSF's processing contract, financial statements, and production data.

## II.　Commerce's Valuation of NTSF's Byproduct Offsets

In calculating NTSF's byproduct offsets, Commerce valued NTSF's byproducts based on surrogate values from Indonesian import data from the Global Trade Atlas ("GTA Data"), published by Global Trade Information Services, Inc.  See Remand Results at 12.  Commerce selected Indonesia as the surrogate country during earlier proceedings in the administrative review.  See NTSF, 44 CIT at __, 487 F. Supp. 3d at 1314.  Defendant-Intervenors argue that Commerce's surrogate value calculation for NTSF's byproducts should be remanded because Commerce's

use of import data to calculate surrogate values for NTSF's byproducts is not supported by substantial evidence and Commerce should have used domestic Indonesian prices to calculate surrogate values. Def.-Intervs.' Cmts. at 10–13.

When valuing factors of production, such as byproduct offsets, the statute requires Commerce to use the best available information regarding the value of the factors from a surrogate market economy country or countries. 19 U.S.C. § 1677b(c)(1); see also An Giang Fisheries Imp. & Exp. Joint Stock Co. v. United States, 41 CIT __, __, 203 F. Supp. 3d 1256, 1273 (2017). The statute instructs Commerce to use the prices or costs of factors of production in one or more market economy countries that are (1) at the level of economic development comparable to that of the nonmarket economy country, and (2) significant producers of comparable merchandise. 19 U.S.C. § 1677b(c)(4). Commerce has broad discretion to determine what constitutes the best available information. Weishan Hongda Aquatic Food Co. v. United States, 917 F.3d 1353, 1364–65 (Fed. Cir. 2019). The Court evaluates whether Commerce's selection of the best available information is reasonable and supported by substantial evidence. Downhole Pipe & Equip., L.P. v. United States, 776 F.3d 1369, 1379 (Fed. Cir. 2015).

Commerce valued NTSF's fish oil and fish meal byproducts using Indonesian import GTA Data under headings of the Harmonized Tariff Schedule from the Indonesian Tariff Commission ("HTS"): heading 2301.20.20 "Flours,

meals and pellets, of fish, with a protein content of 60% or more by weight" for fish meal byproducts; and heading 1504.20.90 "Fats and oils and their fractions, of fish, other than liver oils: Other" for fish oil byproducts.  Remand Results at 13.  Commerce rejected Defendant-Intervenors' proposed data, Indonesian price quotes for *pangasius* fish oil and fish meal, as not the best available information.  Id.

      The U.S. Court of Appeals for the Federal Circuit has affirmed that when determining what constitutes the best available information, Commerce's standard practice is to select, to the extent practicable, surrogate value data that are publicly available, product-specific, reflective of a broad market average, contemporaneous with the period of review, and tax and duty exclusive.  See Jacobi Carbons AB v. United States, 619 F. App'x 992, 996 (Fed. Cir. 2015).  In this case, Commerce applied the same standard criteria articulated in Jacobi Carbons to determine what data constitutes the best available information to calculate NTSF's byproduct offsets.  See Remand Results at 12–13.

      Commerce determined that the GTA Data are the best available information because the GTA Data meet all of Commerce's standard surrogate value selection criteria as publicly available, product-specific, reflective of a broad market average, contemporaneous with the period of review, and tax and duty exclusive.  Id. at 13–16.  In contrast, Commerce determined that Defendant-Intervenors'

proposed price quotes are not publicly available, product-specific, representative of a broad market average, or fully contemporaneous with the period of review. Id.

Defendant-Intervenors do not contest Commerce's determinations with respect to four of the five standard surrogate value selection criteria, that the GTA Data are publicly available, representative of a broad market average, contemporaneous, or tax and duty exclusive. See Def.-Intervs.' Cmts. at 10–13. Defendant-Intervenors challenge only Commerce's determination that the GTA Data are product-specific. See id.

Based on the factor of product-specificity, Commerce valued NTSF's byproducts using GTA Data under HTS headings that correspond directly with NTSF's fish oil and fish meal byproducts. Id. at 14–15. Commerce determined that the GTA Data are product-specific and constitute the best available information because the fish meal HTS heading corresponds closely with the protein content of the fish meal byproducts, a determining factor in their valuation, and because the fish oil byproducts are oils with high protein content that fall under the fish oil HTS heading. Id. In contrast, Commerce determined that despite being species-specific, Defendant-Intervenors' proposed Indonesian price quotes do not discuss the protein content, thereby failing to establish that the price quotes are product-specific. Id. at 15.

The Court notes that record evidence supports Commerce's determination that the GTA Data are product-specific. For example, Commerce used the HTS heading 2301.20.20 "Flours, meals and pellets, of fish, with a protein content of 60% or more by weight" for NTSF's fish meal byproducts and heading 1504.20.90 "Fats and oils and their fractions, of fish, other than liver oils: Other" for NTSF's fish oil byproducts. Record evidence cited by Commerce indicates that NTSF's fish oil and fish meal were of a high protein content within the HTS headings used by Commerce. See NTSF Suppl. Resp. Ex. Supp. CD-47; see also Remand Results at 13. Because the HTS headings in the GTA Data cited by Commerce correspond directly to NTSF's fish oil and fish meal byproducts, the Court concludes that Commerce's determination that the GTA data are product-specific is supported by substantial evidence. See NTSF Suppl. Resp. Ex. Supp. CD-47; Remand Results at 13; see also Submitted GTA Data.

## CONCLUSION

The Court holds that Commerce's determination to grant NTSF offsets for fish oil and fish meal byproducts is supported by substantial evidence and that Commerce's determination that the GTA Data are the best available information to calculate a surrogate value for NTSF's fish oil and fish meal byproducts is supported by substantial evidence. The Court concludes that Commerce supported

its remand redetermination with substantial evidence and sustains Commerce's Remand Results.  Judgment will be entered accordingly.

                /s/ Jennifer Choe-Groves
                Jennifer Choe-Groves, Judge

Dated: September 20, 2021
   New York, New York